DENNIS K. BURKE
United States Attorney
District of Arizona

LON R. LEAVITT
Assistant United States Attorney
Utah Bar No. 11245
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona  85004
Telephone:  (602) 514-7500
Fax:  (602) 514-7760
Lon.R.Leavitt@usdoj.gov

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>              Plaintiff,<br><br>       v.<br><br>Kevin S. Klopfenstein, M.D.; Deborah M. Klopfenstein; and Kevin S. Klopfenstein, M.D., P.C.;<br><br>              Defendants. | **COMPLAINT** |

For its complaint against defendants, the United States of America ("United States") alleges as follows:

**I.     NATURE OF THE ACTION**

1. The United States brings this action to recover under the False Claims Act, 31 U.S.C. §§ 3729-33, and to recover all available damages and other monetary relief under the common law or equitable theories of breach of contract, unjust enrichment, payment by mistake, recoupment of overpayments, and negligent misrepresentation, based on claims for reimbursement that defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., submitted or caused to be submitted to Medicare for Thoracic Electrical Bioimpedance ("TEB") or Biothoracic Impedance ("BTI") tests (CPT code 93701) performed on patients who did not meet the required Medicare coverage criteria.

2. This action is based upon false claims and false statements which defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., made, or caused to be made, to the United States Department of Health and Human Services ("HHS") in order to obtain payment from approximately January 2004 until at least approximately March 2007. The United States incurred damages because of defendant Kevin S. Klopfenstein, M.D.'s and Kevin S. Klopfenstein, M.D., P.C.'s false claims and false statements.

**II.    JURISDICTION**

3. The Court has subject matter jurisdiction to entertain this action pursuant to (1) 28 U.S.C. § 1331 because the causes of action arise under federal law; (2) 28 U.S.C. § 1345 because this action was commenced by the United States; (3) 28 U.S.C. § 1355(a) because this action seeks the recovery of fines and penalties incurred under federal law; and (4) 31 U.S.C. § 3730(a) and (b)(4) because this action asserts claims by the United States under the False Claims Act.

4. The Court has supplemental jurisdiction to entertain the common law and equitable causes of action pursuant to (1) 28 U.S.C. § 1345 because this action was commenced by the United States and (2) 28 U.S.C. § 1367(a) because the common law and equitable causes of action are so related to claims over which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. The Court may exercise personal jurisdiction over defendants pursuant to 31 U.S.C. § 3732(a) because (1) the acts committed by defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., which as set forth below are proscribed by 31 U.S.C. § 3729, occurred in this District and (2) defendants can be found, reside, and transact business in this District.

**III.   VENUE**

6. Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) because (1) defendants are found, reside, or transact business in this District and (2) a substantial part of the events or omissions giving rise to the claims occurred in this District.

7. Venue is also proper in this District under 28 U.S.C. § 1395(a) because (1) the United States' claims accrued in this District and (2) defendants are found in this District.

## IV.  PARTIES

8. The United States brings this action on behalf of its agency, HHS, which is the principal federal agency for protecting the health of Americans and providing essential human services. HHS administers more than 300 programs, covering a wide spectrum of activities, including health and social science research, disease prevention, and health information technology. HHS is an agency and instrumentality of the United States government, and its activities, operations, and contracts are paid from federal funds.

9. Defendant Kevin S. Klopfenstein, M.D., is a physician licensed to practice medicine in the State of Arizona and is found, resides, and transacts business in Parker, Arizona.

10. At all relevant times, defendant Kevin S. Klopfenstein, M.D., and defendant Deborah M. Klopfenstein were husband and wife, and all of defendant Kevin S. Klopfenstein, M.D.'s actions were on behalf of his marital community.

11. Defendant Kevin S. Klopfenstein, M.D., P.C., is an Arizona professional corporation that is found, resides, and transacts business in Parker, Arizona.

## V.  THE MEDICARE PROGRAM

### 1.  Background

12. In 1965, Congress enacted Title XVIII of the Social Security Act ("Medicare") to pay for the costs of certain healthcare services. Medicare is a 100% federally subsidized health insurance system for persons who are eligible based on age, disability, or affliction with end-stage renal disease. 42 U.S.C. §§ 426, 426A.

13. At all times material to this action, HHS was responsible for the administration and supervision of the Medicare program. The Centers for Medicare and Medicaid Services ("CMS"), formerly known as the Health Care Financing Agency ("HCFA"), is an agency of HHS and, at all times material to this action, was directly responsible for the administration of the Medicare program.

3

14. At all times material to this action, CMS contracted with fiscal intermediaries to assist in the administration of Medicare. 42 U.S.C. § 1395h. At all times material to this action, fiscal intermediaries, typically insurance companies, were responsible for processing and paying claims for reimbursement.

15. Medicare, is and at all material times was, comprised of two principal parts. Part A, which is not involved in this case, authorizes payment for institutional care, including hospital, skilled nursing facility, home health, and hospice care. 42 U.S.C. §§ 1395c – 1395i-5. Part B is a voluntary subscription program of supplementary medical insurance covering items and services other than hospitalization, including physician services, durable medical equipment and supplies, and a variety of medical and other health services.

16. The Part B program requires beneficiaries to bear some of the cost of their care in order to prevent overutilization and, accordingly, Part B generally covers 80% of the reasonable charges as established by a physician fee schedule, with the patient responsible for the remaining 20%. 42 U.S.C. § 1395l(a)(1). The allegations herein relate to Part B services provided by defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C. In addition to other limitations on coverage, Medicare covers only those services that are reasonable and necessary. 42 U.S.C. § 1395y(a)(1)(A); 42 C.F.R. § 411.15(k).

**2.    Provider Enrollment and Claims Reimbursement**

17. A provider must enroll in the Medicare program to receive Medicare reimbursement for covered services provided to eligible beneficiaries. To participate in the Medicare program, a provider must file a provider agreement with the Secretary of HHS ("the Secretary"). 42 U.S.C. § 1395cc. The provider agreement requires compliance with the requirements that the Secretary deems necessary for participation in the program. *Id*. Among other things, participating providers are prohibited from making false statements or representations of material facts concerning payment requests, 42 U.S.C. §§ 1320a-7b(a)(1) and (2); 42 U.S.C. § 1320a-7a(1); 42 C.F.R. § 1001.101(a), and are required to know the information contained in HHS, CMS, and fiscal intermediary notices, including manual issuances, bulletins, and other written guides and directives, 42 C.F.R. § 411.406.

18. The enrollment application includes a certification statement requiring the enrolling provider to certify the provider's adherence to a list of requirements, including, among others, the following:

* I am familiar with and agree to abide by the Medicare or other federal health care program laws, regulations and program instructions that apply to my provider/supplier type. The Medicare laws, regulations and instructions are available through the Medicare Contractor.
* I understand that payment of a claim by Medicare or other federal health care programs is conditioned on the claim and the underlying transaction complying with such laws, regulations and program instructions (including the anti-kickback statute and the Stark law), and on a provider/supplier being in compliance with any applicable conditions of participation in any federal health care program.
* I will not knowingly present or cause to be presented a false or fraudulent claim for payment by the Medicare or other federal health care programs, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

19. At all times material to this action, defendant Kevin S. Klopfenstein, M.D., had signed a Medicare enrollment application, and defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., had entered a Medicare provider agreement as described in paragraphs 17 and 18, above.

20. Following enrollment, physicians and other health care providers who provide services to Medicare beneficiaries submit to the appropriate Medicare fiscal intermediary a claim for reimbursement known as Form HCFA 1500. These claims for reimbursement are submitted by mail or electronically pursuant to an "Electronic Data Interchange (EDI) Enrollment Form" (and other documents) signed by the provider. At all times material to this action, defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., submitted, or caused to be submitted, Forms HCFA 1500 by one or both of these methods.

21. Each HCFA 1500 must detail the provider's identifying information; the date and type of services, procedure, or supplies provided; the diagnosis of the patient; and the amount of reimbursement sought. Regulations adopted by CMS require that the description of a provider's services and procedures must be entered onto Form HCFA 1500 by using procedure codes published the American Medical Association, known as the Physicians' Current Procedural Terminology ("CPT").

22. Pursuant to the Electronic Data Interchange Enrollment (EDI) Form, the provider, among other things, (1) certifies that it will submit claims that are accurate, complete, and truthful; (2) agrees that all claims are claims for payment under the Medicare program that will be paid from federal funds; and (3) agrees that falsifying or misrepresenting (or causing the falsification or misrepresentation of) any record or information relating to such claims violates applicable federal law. In addition, the electronic claims themselves contain a certification of accuracy and veracity. Beginning at least on or about September 1, 2004, defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., had entered and were obligated by such an agreement.

23. Medicare relies upon provider certifications in paying claims for services.

24. Using electronic and other means, defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., routinely and knowingly submitted false claims, or caused false claims to be submitted, to the United States because defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., knowingly billed Medicare or knowingly caused Medicare to be billed for patients who did not meet Medicare BTI/TEB benefit eligibility requirements.

**3.    The Medicare BTI/TEB Benefit**

25. BTI or TEB devices, which are a form of plethysmography, monitor cardiac output by non-invasively measuring hemodynamic parameters including stroke volume, systemic vascular resistance, and thoracic fluid status. At all times material to this action, under Medicare Part B, Medicare paid for BTI/TEB tests only for program beneficiaries who met specific eligibility requirements.

6

26. From on or about July 1, 1999 to on or about January 23, 2004, the use of BTI/TEB was covered by Medicare for the "noninvasive diagnosis or monitoring of hemodynamics in patients with suspected or known cardiovascular disease." In reconsidering this policy, CMS concluded that this use was neither sufficiently defined nor supported by available clinical literature to offer the guidance necessary for practitioners to determine when TEB would be covered for patient management. Therefore, CMS revised its coverage policy language in response to a request for reconsideration to offer more explicit guidance and clarity for coverage of BTI/TEB based on a complete and updated literature review.

27. Effective on or about January 23, 2004, CMS revised its coverage for the BTI/TEB benefit (CPT code 93701) and issued a bulletin or National Coverage Determination ("NCD") in Medicare B News Issue 210. The NCD stated Medicare's belief that "the basic use of TEB is the management of patients with congestive heart failure who are difficult to manage and are undergoing significant adjustments in their medical regimen." The NCD also set forth revised indications applicable to Medicare's coverage of the BTI/TEB benefit in the State of Arizona. At all times material to this action, those covered indications were as follows:

    a. Differentiation of cardiogenic from pulmonary causes of acute dyspnea when medical history, physical examination and standard assessment tools provide insufficient information, and the treating physician has determined that TEB hemodynamic data are necessary for appropriate management of the patient.

    b. Optimization of atrioventricular (A/V) for patients with A/V sequential cardiac pacemakers when medical history, physical examination, and standard assessment tools provide insufficient information, and the treating physician has determined that TEB hemodynamic data are necessary for appropriate management of the patient.

. . .

   c. Monitoring of continuous inotropic therapy for patients with terminal congestive heart failure, when those patients have chosen to die with comfort at home, or for patients waiting at home for a heart transplant.

   d. Evaluation for rejection in patients with a heart transplant as a predetermined alternative to a myocardial biopsy. Medical necessity must be documented should a biopsy be performed after TEB.

   e. Optimization of fluid management in patients with congestive heart failure when medical history, physical examination, and standard assessment tools provide insufficient information, and the treating physician has determined that TEB hemodynamic data are necessary for appropriate management of the patient.

   f. Management of patients with drug-resistant hypertension, which is defined as failure to achieve goal blood pressure in patients who are adhering to full doses of an appropriate three-drug regimen that includes a diuretic.

28. At all times material to this action, non-covered indications for the BTI/TEB test consisted of the following:

   a. Proven or suspected disease involving severe regurgitation of the aorta;

   b. Minute ventilation (MV) sensor function pacemakers, since the device may adversely affect the functioning of that type of pacemaker;

   c. During cardiac bypass surgery;

   d. In the management of all forms of hypertension (with the exception of drug-resistant hypertension as defined above); or

   e. Any and all other uses of TEB not otherwise specified.

29. At all times material to this action, claims that providers submitted or caused to be submitted for patients who did not meet any of the criteria set forth in paragraph 27a-f were not properly reimbursable by Medicare.

. . .

30. In or about February 2004, defendants Kevin S. Klopfenstein, M.D., and/or Kevin S. Klopfenstein, M.D., P.C., purchased and began using a machine to perform the BTI/TEB test. From January 1, 2004 through at least June 30, 2006, defendants Kevin S. Klopfenstein, M.D., and/or Kevin S. Klopfenstein, M.D., P.C., billed Medicare for more BTI/TEB tests than (1) any other Part A Medicare provider in Minnesota and Wyoming; (2) any other Part B Medicare provider in Colorado, Hawaii, Iowa, and Nevada; and (3) any other Part A or B Medicare provider in Alaska, Arizona, Idaho, Montana, North Dakota, Oregon, South Dakota, Utah, and Washington.

## VI.   FALSE CLAIMS

31. At all material times material, defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., were participating providers in the Medicare program. As Medicare providers, defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C. (1) were prohibited from making false statements or representations of material facts concerning payment requests; (2) were required to know the information in HHS, CMS, and fiscal intermediary notices, including manual issuances, bulletins, and other written guides and directives; (3) certified that they are familiar with the Medicare laws, regulations, and program instructions that apply to their provider or supplier type; (4) agreed to abide by the Medicare laws, regulations, and program instructions that apply to their provider or supplier type; and (5) certified their understanding that Medicare's payment of a claim is conditioned on the claim and the underlying transaction complying with such laws, regulations, and program instructions.

32. From in or about January 2004 until at least approximately March 2007, defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., routinely violated Medicare laws, regulations, program instructions, manual issuances, bulletins, and other written guides and directives by knowingly billing Medicare, or knowingly causing Medicare to be billed, for services rendered to beneficiaries who were not eligible for the Medicare BTI/TEB benefit.

.   .   .

33. The United States performed and reviewed a random sample of Medicare Part B claims which defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., submitted, or caused to be submitted, in order to determine if the claims and associated payments were appropriate and complied with Medicare reimbursement criteria for the services rendered. A medical review of the random sample indicated a 100% error rate. In other words, none of the claims for reimbursement that defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., submitted, or caused to be submitted, to Medicare with respect to the random sample was properly reimbursable because none of those beneficiaries met any of the criteria set forth in paragraph 27a-f, above, and, therefore, none was eligible for the Medicare BTI/TEB benefit.

34. The United States also performed and reviewed a statistically valid random sample of Medicare Part B claims which defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., submitted, or caused to be submitted, from January 1, 2004 through March 31, 2007, in order to determine if the claims and associated payments were appropriate and complied with Medicare reimbursement criteria for the services rendered. The universe consisted of all services to beneficiaries for CPT code 93701 for which defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., submitted claims, or caused claims to be submitted, from January 1, 2004 through March 31, 2007, which comprises 6,891 dates of service. The sampling unit consisted of each beneficiary date of service. The sampling size was 60 beneficiary dates of service randomly selected from the 6,891 dates of service in the universe, with every beneficiary date of service having an equal chance of being selected. The 60 beneficiary dates of service are attached hereto and are incorporated herein by reference as Exhibit 1.

35. A medical review of the statistically valid sample indicated a 100% error rate. In other words, based on the medical review of the statistically valid sample, none of the claims for reimbursement that defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., submitted or caused to be submitted to Medicare with respect to the statistically valid sample was properly reimbursable because none of those beneficiaries

met any of the criteria in paragraph 27a-f, above, and, therefore, none was eligible for the Medicare BTI/TEB benefit.

**VII. DAMAGES**

36. As set forth above, defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., knowingly submitted or caused to be submitted to the United States false claims for payment in violation of 31 U.S.C. § 3729(a)(1).

37. As set forth above, defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(2). (On May 20, 2009, the Fraud Enforcement and Recovery Act of 2009 ("FERA") was signed into law and made certain retroactive changes to the False Claims Act, including modifying 31 U.S.C. § 3729(a)(2) and renumbering it as 31 U.S.C. § 3729(a)(1)(B).)

38. The false and fraudulent claims and statements that defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., submitted or caused to be submitted to the United States had a natural tendency to influence, and were material to, the United States' decision to approve the claims and make payments pursuant thereto.

39. The United States relied on the false and fraudulent claims and statements that defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., submitted or caused to be submitted when the United States approved the claims and made payments pursuant thereto.

40. Because of the false and fraudulent claims and statements that defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., submitted or caused to be submitted to the United States, defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., submitted or caused the submission of at least 6,615 false claims for payment to the United States. The United States paid such claims and is entitled to recover in an amount to be proven at trial.

. . .

. . .

41. The United States sues herein for all false claims that resulted from defendant Kevin S. Klopfenstein, M.D.'s and defendant Kevin S. Klopfenstein, M.D., P.C.'s false claims and statements, including but not limited to the specific false claims set forth above. Upon information and belief, there are false claims in addition to those specifically identified. The basis for this belief is that the approximately 6,615 false claims identified above were located through a sampling process, and the fact that a high percentage of false claims were found through one sampling indicates that additional false claims may also be found. For example, from on or about April 1, 2007 through on or about March 14, 2008 (i.e., during the time period immediately following the coverage of the statistically valid medical review mentioned in paragraphs 34 and 35, above, which yielded a 100% error rate), defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., submitted or caused to be submitted to the United States approximately 1,181 additional claims for the BTI/TEB test. Accordingly, the United States reserves the right, at trial of this action or in any other proceeding herein, to present other evidence of false claims and damages related thereto, including but not limited to other samples that have been analyzed or reviews that have been conducted to identify false claims.

**VIII. CAUSES OF ACTION**

FIRST CAUSE OF ACTION

(False Claims Act: Presentation of False Claims)

42. The United States realleges and incorporates by reference paragraphs 1 through 41 as though fully set forth herein.

43. Defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., knowingly presented or caused to be presented false or fraudulent claims for payment or approval to the United States.

44. By virtue of the false or fraudulent claims that defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., presented or caused to be presented, the United States is entitled to recover under the False Claims Act.

.   .   .

## SECOND CAUSE OF ACTION

(False Claims Act: Making or Using False Record or Statement)

45. The United States realleges and incorporates by reference paragraphs 1 through 44 as though fully set forth herein.

46. Defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(2), which was modified by FERA and renumbered as 31 U.S.C. § 3729(a)(1)(B).

47. By virtue of the false records or statements that defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., made, used, or caused to be made or used, the United States is entitled to recover under the False Claims Act.

## THIRD CAUSE OF ACTION

(Breach of Contract)

48. The United States realleges and incorporates by reference paragraphs 1 through 47 as though fully set forth herein.

49. By virtue of the conduct described above, defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., breached the contracts specified in paragraphs 17 through 22, above, with the United States.

50. The actions described above were material breaches of those contracts.

51. The United States, unaware of such conduct, paid defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., under the contracts.

52. By reason of defendant Kevin S. Klopfenstein, M.D.'s and Kevin S. Klopfenstein, M.D., P.C.'s breaches of those contracts, the United States has been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

(Unjust Enrichment)

53. The United States realleges and incorporates by reference paragraphs 1 through 52 as though fully set forth herein.

1       54.    This is a claim for the recovery of monies, in an amount to be determined at trial, by which defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., have been unjustly enriched at the United States' expense, namely, the monies paid to defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., based on false claims for TEB or BTI tests performed on patients who did not meet the required Medicare coverage criteria.

      55.    The United States had and continues to have a reasonable expectation of payment of the monies paid to defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., based on false claims for TEB or BTI tests performed on patients who did not meet the required Medicare coverage criteria.

      56.    Defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., should reasonably have expected and should reasonably be expected to pay to the United States the monies paid to defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., based on false claims for TEB or BTI tests performed on patients who did not meet the required Medicare coverage criteria.

      57.    Society's reasonable expectations of person and property would be defeated by defendant Kevin S. Klopfenstein, M.D.'s and defendant Kevin S. Klopfenstein, M.D., P.C.'s nonpayment to the United States of the monies paid to defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., based on false claims for TEB or BTI tests performed on patients who did not meet the required Medicare coverage criteria.

<u>FIFTH CAUSE OF ACTION</u>

(Payment By Mistake)

      58.    The United States repeats and realleges each allegation in paragraphs 1 through 57, as though fully set forth herein.

      59.    This is a claim for the recovery of monies paid by the United States to defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., as a result of mistaken understandings of fact.

.  .  .

60. The claims and statements defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., submitted or caused to be submitted to the United States' agents were based upon mistaken or erroneous understandings of material fact.

61. The United States, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims and statements, paid defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., certain sums of money to which they were not entitled, and defendants are thus liable to account and pay such amounts to the United States.

### SIXTH CAUSE OF ACTION
(Common Law Recoupment)

62. The United States repeats and realleges each allegation in paragraphs 1 through 61, as though fully set forth herein.

63. This is a claim for common law recoupment for the recovery of monies unlawfully paid by the United States to defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., contrary to statute or regulation.

64. The United States paid defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., certain sums of money to which they were not entitled, and defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., are thus liable under the common law of recoupment to account and return such amounts to the United States.

### SEVENTH CAUSE OF ACTION
(Negligent Misrepresentation)

65. The United States realleges and incorporates by reference paragraphs 1 through 64, as though fully set forth herein.

66. Defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., were negligent in imparting words or communicating information to the United States.

67. Defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., were bound to the United States by some relation or duty of care.

68. The United States was expected to rely upon the information.

69. The United States acted or failed to act in reliance on the information.

70. The United States incurred damages as a result of its action or failure to act and therefore is entitled to damages in an amount to be determined at trial.

## IX. PRAYER FOR RELIEF

WHEREFORE, the United States demands and prays that judgment be entered in favor of the United States as follows:

1. On the First and Second Causes of Action under the False Claims Act, for the amount required and appropriate under the False Claims Act.

2. On the Third Cause of Action for breach of contract, for contract damages, plus interest, costs, and expenses, and such further relief as may be just and proper.

3. On the Fourth Cause of Action for unjust enrichment, for the damages sustained and/or amounts by which defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., were unjustly enriched, plus interest, costs, and expenses, and such further relief as may be just and proper.

4. On the Fifth and Sixth Causes of Action for payment by mistake and recoupment, for the damages sustained by the United States and/or amounts by which defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., retained monies to which they are not entitled, plus interest, costs, and expenses, and such further relief as may be just and proper.

5. On the Seventh Cause of Action for negligent misrepresentation, for the damages sustained and/or amounts by which defendants Kevin S. Klopfenstein, M.D., and Kevin S. Klopfenstein, M.D., P.C., were unjustly enriched or to which they were not entitled, plus interest, costs, and expenses, and such further relief as may be just and proper.

Respectfully submitted this 15th day of January, 2010.

DENNIS K. BURKE
United States Attorney

/s/ Lon R. Leavitt
LON R. LEAVITT
Assistant United States Attorney